UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RETIF OIL & FUEL, LLC | CIVIL ACTION |
| VERSUS | NO. 17-7831 |
| OFFSHORE SPECIALTY FABRICATORS, LLC, ET AL. | SECTION: M (3) |

## ORDER & REASONS

Before the Court is Plaintiff's motion for partial summary judgment, R. Doc. 42, to which Defendant Offshore International Group, Inc. ("OIG") responds in opposition, R. Doc. 50, and in support of which Plaintiff replies, R. Doc. 57; Defendant OIG's motion for summary judgment, R. Doc. 45, to which Plaintiff responds in opposition, R. Doc. 51, and in support of which OIG replies, R. Doc. 60; and Plaintiff's motion to strike OIG's jury demand, R. Doc. 46, to which OIG responds in opposition, R. Doc. 49, and in support of which Plaintiff replies, R. Doc. 55. Having considered the parties' briefs and the applicable law, the Court issues this Order & Reasons.

**I.  BACKGROUND**

This claim arises out of an alleged breach of a maritime contract. Plaintiff Retif Oil & Fuel, L.L.C. ("Retif Oil" or "Plaintiff") alleges that between August 10, 2015 and December 29, 2015, it provided fuel and lube to defendant Offshore Specialty Fabricators, L.L.C. ("OSF") and the vessel defendants.[1] R. Doc. 1 at 2-3. Plaintiff alleges that OSF asked for these provisions and promised payment. R. Doc. 1 at 3. Plaintiff provided OSF with invoices for these provisions and demanded payment. *Id.* Plaintiff alleges that OSF has failed to pay Plaintiff for the fuel and lube.

---

[1] Defendants *in rem* M/V Brazos Express, M/V Lightning Express, and M/V Typhoon Express are United States-flagged vessels owned by an OSF affiliate. R. Doc. 1 at 2; R. Doc. 42-3 at 5; R. Docs. 42-6 and 42-7.

*Id.* Plaintiff alleges that OSF has breached the contract between OSF and Retif Oil and in the alternative that Retif Oil provided the fuel and lube based on assurances that OSF would pay for them. R. Doc. 1 at 4. Additionally, Plaintiff alleges an alternative claim for *quantum meruit*. R. Doc. 1 at 5.

Plaintiff also claims that OIG executed a guaranty agreement (the "Guaranty") in favor of Retif Oil to pay money owed by OSF to Retif Oil. R. Doc. 1 at 5; *see* R. Docs. 18-5 and 18-6. Plaintiff has made a demand against OIG, and OIG has failed to pay the invoices owed by OSF. R. Doc. 1 at 6. Plaintiff originally alleged that the listed vessels are owned by OSF, and Retif Oil recorded liens against the vessels. *Id.* Plaintiff states that the liens have not been satisfied. R. Doc. 1 at 7. However, it is now undisputed that the vessel defendants were owned by OSF's affiliate, Offshore Express, L.L.C., at the time of the relevant transactions. R. Doc. 42-3 at 5; *see* R. Doc. 42-7. Therefore, Plaintiff asks the Court for judgment against the defendants for damages including payment of the outstanding invoices, interest, expenses, attorney's fees, and court costs. R. Doc. 1 at 7. Plaintiff also asks that the defendant vessels be seized and sold to satisfy the liens owed to Retif Oil. R. Doc. 1 at 8.

Plaintiff previously brought a motion for partial summary judgment against OIG, R. Doc. 18, seeking to recover from OIG the entirety of OSF's debt plus legal interest, attorney's fees and costs, on the grounds that OIG signed an authentic and duly executed Guaranty for the debt of OSF, and that the Guaranty was never modified or amended and was executed with sufficient cause because it was done to induce Retif Oil to supply fuel and oil to OSF. R. Doc. 18-3. Defendant OIG opposed the motion arguing that it cannot be liable for any of the alleged fuel and lube sales in this case because the Guaranty agreement obligates OIG to pay the debts of Offshore Specialty Fabricators, Inc. ("OSF, Inc.") rather than those of Offshore Specialty Fabricators, LLC

("OSF"). R. Doc. 21 at 3. OIG opposed the motion on the additional grounds that it cannot be held liable as a guarantor for obligations that are not proven and Plaintiff failed to provide evidence that either OSF or OSF, Inc. approved the alleged fuel and lube sales. R. Doc. 21 at 4-5.

On August 17, 2018, before the transfer of this case to this Section of Court, Judge Eldon E. Fallon denied Plaintiff's motion for partial summary judgment. R. Doc. 32. The Court rejected Defendant OIG's argument that it was not liable as guarantor for the purchases of defendant OSF because it was the guarantor of OSF, Inc. rather than OSF. Judge Fallon concluded that "for the purposes of any debt owed to Plaintiff, OSF, LLC and OSF, Inc. are the same entity." *Id.* at 4. Nevertheless, Judge Fallon determined that OIG raised the material fact issue of whether OSF approved the purchases from Retif Oil, that "[p]roof of approval cannot be demonstrated merely by the exchange of fuel and/or oil and invoices," and that, because "sufficient evidence to support approval of the purchases" was not presented with Plaintiff's motion for partial summary judgment, "this is an issue of fact that is properly reserved for the trier of fact." *Id*.

## II. PENDING MOTIONS

Plaintiff now re-urges its motion for partial summary judgment against defendant OIG, R. Doc. 42, again arguing that it is entitled to the entirety of OSF's debt plus legal interest, attorney's fees and costs, because OIG executed the Guaranty for the debt of OSF. R. Doc. 42-3. Plaintiff submits additional summary judgment evidence seeking to establish that OSF approved the fuel and lube purchases pursuant to an oral open account contract between Retif Oil and OSF. R. Doc. 42-3 at 4; *see* R. Docs. 42-4, 42-5 and 42-6. In opposition to Plaintiff's motion for partial summary judgment, and in support of its own motion for summary judgment, OIG reiterates its argument that the Guaranty obligates OIG to pay the debts of OSF, Inc. rather than those of OSF. R. Doc. 50 at 5; R. Doc. 45-1. Additionally, OIG again claims that Plaintiff has failed to provide evidence

3

that either OSF or OSF, Inc. approved the alleged fuel and lube sales. R. Doc. 50 at 6-10. Defendant OIG again argues that it cannot be held liable as a guarantor for obligations that are not proven. *Id.*

## III. LAW & ANALYSIS

### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d

1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

   b. Analysis

      (i)  **The Guaranty**

Plaintiff re-urges that defendant OIG, as guarantor, is liable for the purchases of defendant OSF, citing to Judge Fallon's earlier Order & Reasons, where he observed:

> Documents submitted by Plaintiff demonstrate that current Defendant OSF, LLC used to be titled OSF, Inc. but was converted in 2009. R. Doc. 24. Generally, the effects of an entity conversion are that "[t]he liabilities of the converting entity remain the liabilities of the surviving entity." La. R.S. 12:1-955(A)(2). Accordingly, for the purposes of any debt owed to Plaintiff, OSF, LLC and OSF, Inc. are the same entity.

R. Doc. 32 at 4. And OIG reiterates in opposition that it is the guarantor of OSF, Inc. rather than OSF, and that the Guaranty does not apply to the alleged debts of OSF for which Plaintiff seeks recovery in this case.

In support of its own motion for summary judgment, OIG argues that "there is no merit" to Plaintiff's contention that La. R.S. 12:1-955 requires that a guarantor remain liable for the debts of the surviving entity following a conversion, even though the statute provides that "[t]he liabilities of the converting entity remain the liabilities of the surviving entity." La. R.S. 12:1-955(A)(2). OIG submits that the Court in its August 17, 2018 Order & Reasons (R. Doc. 32) did not address whether Section 12:1-955 may be read to require a guarantor to remain liable for the debts of a surviving entity following a conversion. And, OIG contends, Section 12:1-955 is not susceptible of such a reading. OIG relies upon the decision in *VRV Development, L.P. v. Mid-Continent Casualty Co.*, 2010 WL 375499, at *4 (N.D. Tex. Feb. 3, 2010), which it says has

5

"directly analogous facts." R. Doc. 45-1 at 1. *VRV Development* involved a conversion under Texas' business entity conversion statute, the operative portion of which OIG says is "practically identical" to Section 12:1-955. R. Doc. 45-1 at 6. In *VRV Development*, an insurer had issued an insurance policy to the converting entity, which was the only named insured. The surviving entity later sought, but was denied, insurance coverage under the policy. The court held that the surviving entity was not covered under the policy, because the insurer "contracted ***not to pay a simple debt***, but to bear a risk that it evaluated and voluntarily accepted." *VRV Development*, 2010 WL 375499, at *4 (emphasis added). Reasoning that the Guaranty must be strictly construed to encompass only OSF, Inc., notwithstanding the conversion, OIG contends that Plaintiff was required to ask OIG to sign a new guaranty agreement covering the debts of OSF once OSF, Inc. was reorganized and restructured as OSF in 2009.

Plaintiff insists that OSF's conversion from a corporation to a limited liability company did not release OIG from its obligations under the Guaranty, because (1) under Louisiana's business entity conversion statute, following the conversion of OSF, Inc. to OSF, OSF is the "exact same entity" as was OSF, Inc., (2) *VRV Development* is distinguishable from this case in that it involved a dispute over the interpretation of an insurance policy (which expressly limited coverage to the named insured), and not a guaranty agreement, and (3) another Texas case, *Wasserberg v. Flooring Services of Texas, LLC*, 376 S.W.3d 202 (Tex. App. 2012), is the more analogous case because it involved a guaranty agreement. In *Wasserberg*, the court held that the guarantors remained liable for the debts of a successor entity following a business entity conversion, even though the guaranty agreement only referenced the converting entity. *Id.* at 207. The court reasoned that, under the Texas conversion statute, the converting entity continued to exist in the organizational form of the successor entity when the goods and services at issue were provided.

6

*Id.* at 206-07; *see also Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720-21 (Tex. App. 2004) (because the successor entity is the same company as the converting entity with which the guarantor executed a guaranty agreement, the guarantor is liable for the debts at issue).

This Court finds that *Wasserberg*, not *VRV Development*, is the case more analogous to this one, and thus, the more persuasive authority. Moreover, this Court reaffirms that "for the purposes of any debt owed to Plaintiff, OSF, LLC and OSF, Inc. are the same entity." Order & Reasons (R. Doc. 32) at 4. Louisiana Revised Statutes section 12:1-955(A)(7) provides that the surviving entity is deemed (1) to be the same entity without interruption as the converting entity and (2) to have been organized on the date that the converting entity was originally organized. This places OSF in the shoes of OSF, Inc. for purposes of the Guaranty and, hence, for purposes of any debt OSF owes to Plaintiff for which OIG is now liable under the Guaranty.

**(ii)  Proof of approval of the purchases**

With regard to the summary judgment evidence Plaintiff previously submitted to prove OSF's approval of the fuel and lube purchases at issue, Judge Fallon observed:

> However, Defendant OIG has also raised the material fact issue of whether OSF approved the purchases from Plaintiff. Proof of approval cannot be demonstrated merely by the exchange of fuel and/or oil and invoices. Accordingly, sufficient evidence to support approval of the purchases is not presently before the Court. Rather, this is an issue of fact that is properly reserved for the trier of fact.

Order & Reasons (R. Doc. 32) at 4.

To establish that OSF approved the fuel and lube purchases from Plaintiff, Plaintiff now submits the affidavit of its former chief financial officer attesting that Plaintiff and OSF entered into an open account contract by which Plaintiff would supply fuel and lube to vessels owned by OSF's affiliate, that the oral contract obligated OSF to pay for all fuel and lube Plaintiff supplied to the vessels, and that OSF approved all future purchases of fuel and lube Plaintiff supplied to the

7

vessels. R. Doc. 42-4. In addition, Plaintiff submits other summary judgment evidence (including the affidavits of OSF's former chief financial officer and Retif Oil's president) to demonstrate circumstances corroborating the oral contract and OSF's approval of the fuel and lube purchases. R. Docs. 42-5 and 42-6.

In opposition, OIG contends that Plaintiff's additional summary judgment evidence is insufficient to establish that OSF actually approved and agreed to pay for the fuel and lube Plaintiff provided to the vessel defendants between August 10, 2015 and December 29, 2015 – that is, "the specific fuel sale transactions underlying [Plaintiff's] claim against OIG." R. Doc. 50 at 3, 5. In short, OIG notes that none of the affidavits Plaintiff submits specifically substantiates OSF's alleged approval of the specific transactions during the relevant time frame, and that none of the affiants had personal knowledge of any such approval: two of the affiants left OSF before the period in question, and the third affiant expressly testified he had no personal knowledge about the transactions until after the fact.

To prevail against a guarantor under a contract of guaranty, a creditor first must prove that it entered into a principal contact with the principal debtor that renders the debtor liable for the amount being sought from the guarantor. *See Cardinal Wholesale Supply, Inc. v. Chaisson*, 504 So. 2d 167, 170 (La. App. 1987); *Shell Oil Co. v. S.S. Orient Coral*, 548 F. Supp. 1385 (E.D. La. 1982). In proving OSF's continuing obligation for the fuel and lube purchases between August and December 2015, Plaintiff relies upon evidence, including corroborating circumstances, of the oral contract between Retif Oil and OSF of an indefinite term, their twelve-year pattern of practice before the relevant period in 2015, and OSF's bankruptcy schedules listing the amount of the debt at issue. Though this evidence is circumstantial, it is competent and lends credence to Plaintiff's position. Nevertheless, because it is not direct evidence of the specific transactions at issue and

8

depends upon the alleged continuing nature of the contractual relationship between Retif Oil and OSF, this Court cannot say that the material issues of fact are beyond dispute. As a consequence, the disputed factual issues preclude summary judgment in Plaintiff's favor and are left for the trier of fact to resolve.

**(iii) Jury demand**

Plaintiff moves to strike OIG's demand for trial by jury, contending that "there exists no right to a trial by jury on issues in a claim that is an admiralty or maritime claim under Fed. R. Civ. P. 9(h)." R. Doc. 46 at 1 (citing Fed. R. Civ. P. 38(e)). Because there remain fact issues to be resolved by the trier of fact, the Court will address the issues raised by Plaintiff's motion to strike the jury demand. Plaintiff argues that it elected to proceed in admiralty by specifically invoking Rule 9(h) and that "OIG did not contest the admiralty and maritime jurisdiction of this Court" when it answered. R. Doc. 46-1 at 3.

In opposing the motion, OIG contends that Plaintiff's claim against OIG based on the written Guaranty is not a maritime claim, even if Plaintiff's claims against OSF and the vessel defendants sound in admiralty. Citing *Roswell Navigation v. Poseidon Marine Consultants, Inc.*, 1997 WL 680576, at *1 (E.D. La. Oct. 31, 1997), OIG argues that another Section of this Court has held that a guaranty agreement regarding the payment of money is not a maritime contract.

"A maritime contract 'is one that … relates to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment.'" 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 3-10 (5th ed. 2017) (quoting *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992)). This treatise identifies the competing lines of cases that bear upon the appropriate classification of the Guaranty: "A surety agreement is held not to be an admiralty contract, since the obligation of the surety is only to pay damages in

9

the event of liability on the underlying contract; yet a guarantee to fully perform a maritime contract does give rise to an admiralty claim." *Id.* (citing *Japan Line, Ltd. v. Willco Oil Ltd.*, 424 F. Supp. 1092 (D. Conn. 1976)).

The contract at issue in *Roswell Navigation* (the case upon which OIG relies) was the agreement of Gulf States Marine Technical Bureau, Inc. ("GSM") to guarantee Poseidon Marine Consultants, Inc.'s obligation to return contract funds to Roswell Navigation in exchange for an extension of time to do so. 1997 WL 680576, at *1. Poseidon had failed to deliver piston crowns for which Roswell had paid and, thereafter, Poseidon had transmitted refund checks to Roswell that were dishonored for insufficient funds. In other words, GSM's guaranty arose well after the underlying contract for vessel parts between Poseidon and Roswell, and it was strictly limited to obligating GSM to pay Roswell any sum Poseidon failed to refund. The subject matter of the guaranty was merely "a covenant to pay damages" and had no reference to maritime services or maritime transportation. *Id.* at *2. As a consequence, the court held that the guaranty was not a maritime contract.[2] Citing the distinction drawn by the Supreme Court in *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961) (a suit on a bond covering cargo on general average was governed by admiralty, while an agreement to pay damages for another's breach of a maritime charter was not), the court in *Roswell Navigation* observed: "It might be different if the alleged guaranty was to perform the underlying maritime contract in the event the creditor defaulted thereon." 1997 WL 680576, at *2.

Illustrative of this distinction, drawn even by the court in *Roswell Navigation*, is the decision in *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, 2008 WL 2546180

---

[2] To like effect, see *Effjohn International Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 565-66 (5th Cir. 2003), in which a passenger vessel surety bond was held not to fall under admiralty jurisdiction because "[t]he service to be performed under the bond (reimbursing those who made a deposit for a cruise but never sail[ed]) is non-maritime in nature."

10

(S.D.N.Y. June 19, 2008), which involved a party's agreement to guarantee fully the charter defendants as to certain demurrage charges. In holding that the guaranty sounded in maritime, the court explained:

> While courts in this Circuit and elsewhere have long held that an agreement to act as a surety on a maritime contract is not maritime in nature, *see Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.,* 462 F.2d 673, 678 (2d Cir.1972) (citing *Pac. Sur.,* 151 F. [440,] 443-44 [7th Cir. 1907)]); *see also Japan Line, Ltd. v. Willco Oil Ltd.,* 424 F.Supp. 1092, 1094 (D. Conn.1976), they have recognized that the same is not true of an agreement to guarantee the performance of a maritime contract, *see, e.g., Compagnie Francaise de Navigation a Vapeur v. Bonnasse,* 19 F.2d 777, 779 (2d Cir. 1927) (L. Hand, J.). The rationale for the distinction between the two is as sound now as it was in 1927: whereas a guarantor promises to become the principal obligor and do the very act promised, *see id.,* "a surety on a bond does not promise to perform ..., but to pay damages in the event of nonperformance ...." *Mercator Line, Inc. v. Witte Chase Corp.,* 88 Civ. 8060, 1990 WL 52254, at *3 (S.D.N.Y. Apr. 18, 1990).
>
> The contract provided by Plaintiff clearly states that it was entered into by [a charterer defendant], "whose performances are fully guaranteed by [KT]." … Nevertheless, Defendant GSHL [an alleged alter ego of guarantor KT whose funds were attached to satisfy the guarantee] now urges the Court to look beyond that clear language, arguing that a guarantee of payment of demurrage is, in effect, a guarantee of liquidated damages and, as such, is tantamount to a surety on a bond. … *Compagnie Francaise* and its progeny do not permit the Court to disregard the contract's plain terms. ***The fact that KT's guarantee required it to pay money only is irrelevant***. See *Compagnie Francaise,* 19 F.2d at 779. Because the payment of demurrage was an obligation of the charterer under the charter party, there is no question that the obligation relates to maritime service and transactions. … Accordingly, KT's guarantee sounds in maritime.

*C. Transport Panamax,* 2008 WL 2546180, at *2 (certain citations omitted; emphasis added).

Under the rationale of *C. Transport Panamax* and the authorities cited therein, the Guaranty here is a maritime contract. The performance OIG vouchsafed by the Guaranty was OSF's payment for the fuel and lube purchased from Plaintiff for the vessel defendants. The fact that OIG's Guaranty required it to pay money only – not damages – is irrelevant. Because the payment for provisions was an obligation of OSF under a contract for the essentials of maritime transportation, there is no question that the obligation of the Guaranty – namely, to fully perform

the underlying obligation to pay for the provisions if OSF did not – relates to maritime services and transactions. Accordingly, because the Guaranty is a maritime contract, as to which there is no right to trial by jury, OIG is not entitled to a jury and Plaintiff's motion to strike is well-founded.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's motion for partial summary judgment, R. Doc. 42, is DENIED;

IT IS FURTHER ORDERED that OIG's motion for summary judgment, R. Doc. 45, is DENIED;

IT IS FURTHER ORDERED that Plaintiff's motion to strike jury demand, R. Doc. 46, is GRANTED and the jury demand is stricken.

New Orleans, Louisiana, this 28th day of September 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE